

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
XXXXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. Lee Brady, Commissioner
Department of Banking
Austin, Texas

Dear Sir:

Opinion No. O-2641
Re: Appropriation to State
Banking Department - Senate
Bill 427, Acts 46th Legis-
lature.

In your letter of August 16, 1940, you request the opinion of this department upon the following question:

1. Are expenditures in the supervision of any one class of corporation (under the supervision of the Banking Department), limited to fees collected from that class of corporation?

2. Are expenditures under Item 7 (of the appropriation to the State Banking Department, Senate Bill 427, Acts of the 46th Legislature), under the sub-caption "Loan and Brokerage Division" being a $19,000 appropriation labeled "Traveling Expense, Banking Department" limited to the payment of traveling expense incurred in loan and brokerage companies, or may it be used to pay the expense of travel in supervision of banks?

3. Is Item 8 (of the same appropriation) following Item 7 above mentioned, limited to the payment of premiums on bonds of employees charged with supervision of loan and brokerage companies?

As you state, the Banking Department is charged with the responsibility of supervising four distinct classes of financial institutions, namely, banks, building and loan associations, loan and brokerage companies, and credit unions.

As to banks, Article 362, R.C.S., 1925, requires that the expense of every general and special examination shall be paid by the bank examined in such an amount as the commissioner shall certify to be just and reasonable, and it further provides that assessments therefor shall be made by the commissioner upon the banks examined in proportion to the assets or resources held by such banks upon the date of the examination, Article 363 requires sums collected as examination fees from banks to be paid by the commissioner directly into the State Treasury to the credit of the general revenue fund.

Hon. Lee Brady, page 2.

As to building and loan associations, Article 881a-9, Vernon's Revised Civil Statutes, requires the banking commissioner to collect from every domestic building and loan association fees in lieu of examination fees, based upon gross assets, in accordance with a fixed schedule. This article requires the commissioner to assess enough against such association to carry out the provisions of the building and loan association act. This article further provides:

". . . said fees when collected shall be placed in a separate fund with the State Treasurer to be expended during the current year, or so much thereof as may be necessary in carrying out the provisions of this Act, and should there be an unexpended balance at the end of the year, the Banking Commissioner of Texas shall reduce the assessment for the succeeding year so that the amount produced and paid in the State Treasury, together with said unexpended balance in the Treasury, will not exceed the amount appropriated for the current year, to pay all necessary expenses of supervising the operation and examining the business of the corporations doing business under the provisions of this Act, which funds shall be paid out upon requisition made out and filed by the Banking Commissioner of Texas, when the Comptroller shall issue warrants therefor."

As to the loan and brokerage companies, Article 1524a, Section 2, Vernon's Revised Civil Statutes, requires such class of corporations to pay the actual traveling expenses, hotel bills, and all other actual expenses incident to such examination, and a fee not exceeding one-eighth of one per cent of its actual paid-in capital.

By the provisions of Article 2465, Vernon's Revised Civil Statutes, credit unions are required to pay the expense of each examination made of such credit union, but the statute requires that no charge shall be made for services except traveling, hotel and meal expenses and other actual expenses, and requires that the credit unions shall be furnished with an itemized statement of such expenses.

The rider appended to the appropriation made to the State Banking Department, by Senate Bill 427, Acts of the 46th Legislature, requires that "all appropriations herein made for the State Banking Department shall be paid out of their receipts, and the Commissioner shall reduce his expenditures so as not to exceed the actual receipts collected." Said rider further provides:

"For the purpose of enforcing the credit union laws of this State, all fees collected under and by virtue of Chapter 11, Acts of the 41st Legislature, and all unexpended balances are hereby appropriated to the Banking Department."

As to the fees collected from building and loan associations, it is to be observed that the Legislature has required the creation of a separate fund for the deposit of such fees, and it is clear that the Legislature contemplated that such fees should be dedicated solely to defraying the cost of administering the building and loan association law, and, further, that the cost of administering the building and loan association laws should be paid exclusively from such separate funds. The appropriation bill passed by the 46th Legislature, confirms this observation by the use of the following language in the rider appended to S.B. 427:

"Sec. 3. It is further provided that in the event the Statutes of the State of Texas provide that any amount, fees or funds herein appropriated to be paid out of local or special fees or funds, that the same be so paid out of said local or said special fees or funds instead of being paid out of the General Revenue Fund."

It is thus clear that the fees collected from building and loan associations under Article 881a-9, since they are available only for the payment of expenditures incurred in supervising building and loan associations, cannot be taken into consideration in determining the authority of the banking commissioner to make expenditures in the supervision of one of the other classes of corporations. It is likewise clear that expenditures in the supervision of building and loan associations are limited to the fees collected from building and loan associations.

The general law does not set apart and dedicate to the payment of expenditures in the supervision of credit unions the fees collected from credit unions. However, the legislature has, by the rider above quoted, set those fees apart for the purpose of enforcing the credit union laws of this State by appropriation. It is therefore clear that such fees may not be taken into consideration by the banking commissioner in determining the authority to make expenditures in connection with the supervision of another class of corporations. However, neither the general law nor the appropriation bill indicates any intention on the part of the Legislature to limit the expenditures to be made in

the supervision of credit unions to the fees collected from such credit unions. On the contrary, this was clearly not intended by the Legislature, for it specifically provided that the credit unions should not be assessed any fee for services rendered in supervising them. We therefore hold that expenditures in the supervision of credit unions are not limited to the fees collected from that class of corporation, but that the fees collected from credit unions under the article of the statute above cited, may be used to measure only expenditures incurred in the supervision of credit unions.

Fees collected by the Banking Department from banks and loan and brokerage companies occupy a different status. So also do the receipts of the Banking Department collected otherwise than as examination fees or fees in lieu of examination fees from the corporations under the supervision of the Banking Department. There is no dedication of the examination fees collected from banks and loan and brokerage companies. On the contrary, the statute provides or contemplates that they shall be deposited in the General Revenue Fund. The examination fees from banks and loan and brokerage companies are not impressed with a trust, to be used only for expenses incurred in the supervision of such companies. On the contrary, these charges merely represent a quid pro quo for services rendered, and when the corporation has made the payment required by law, it has no interest in the disposition made by the State of the monies thus collected. The injustice which you point out in your letter, that banks are thereby compelled to contribute to the cost of supervision of loan and brokerage companies, or vice versa, is more apparent than real. The law only permits the commissioner to levy such assessments as will compensate the State for the cost of examination. When the bank or loan and grokerage company has paid the cost of the examination, it has paid for the cost of the service rendered by the State in supervising it. The fact that the money thus received by the State may be devoted by the State to other State purposes does not operate unfairly as to the bank or loan and brokerage company, for the cost of supervision of loan and brokerage companies has not been taken into consideration by the commissioner in determining the amount of the assessment to be paid by the bank, and vice versa.

We hold that the aggregate of the examination fees collected by the Commissioner from banks and from loan and brokerage companies, and the aggregate of the receipts collected by the commissioner from charges other than those from examination fees or fees in lieu of examination fees from all of the classes of corporations under the supervision of the Banking Commissioner, may be taken into consideration in determining the

authority of the commissioner to make expenditures in connection with the supervision of banks, loan and brokerage companies, and credit unions. Thus the cost of supervising banks is not limited by the receipts collected from banks, the cost of supervising loan and brokerage companies is not limited to fees collected from loan and brokerage companies, and the cost of supervising credit unions is not limited to fees collected from credit unions.

Your second and third questions are, for convenience, considered together.

Your appropriation is found under the general heading, "State Banking Department". The first division is merely styled "Salaries". The second division is styled "Maintenance and Miscellaneous". The third division is styled "Building and Loan Division". The fourth division is styled "Loan and Brokerage Division". Under the Loan and Brokerage heading we find items numbered 6, 7, and 8. Item 6 is for the sum of $200.00 per annum for printing and distributing law books; Item 7 of $19,000.-00 per annum for "Traveling expense, Banking Department"; and Item 8 is $420.00 per annum for "Surety Bond Premiums".

Referring to the appropriation made by the Legislature for the Department of Banking for the fiscal biennium ending August 31, 1939, we find the same general pattern followed. In that appropriation bill there was the heading under the general heading," Department of Banking", of "Salaries". Then there appeared the heading called "Maintenance and Miscellaneous". Under the subheading, "Maintenance and Miscellaneous" of that appropriation, there appeared Item 15, which was a lump sum appropriation of fees collected from building and loan associations as an appropriation for expenses and salaries of the examiners and other employees and expenses necessary in supervising building and loan associations. We find also Item 16, a similar lump sum appropriation relative to the supervision of the loan and brokerage companies; Item 17, an appropriation of all fees collected under the credit union law for the supervision of credit unions. Then, under that appropriation we find three items similar to those to which we have above referred as appearing in the appropriation for the present biennium. These items are numbered 18, 19, and 20; Item 18 being in the sum of $300.00 per annum for printing and distributing law books; Item 19, the sum of $22,500.00 per annum for "Traveling Expenses of Commissioner, Employees, and all authorized representatives of the Banking Department"; and Item 20, $450.00 per annum for "Surety Bond Premiums".

Although the position of an appropriation with respect to a particular heading may be of importance in determining the intent of the Legislature, it is not conclusive. A greater significance must be attached to the nature of the item.

In the appropriation for the preceding biennium, it is clear that Items 18 and 20 were intended for the Banking Department as such, not for a particular division thereof. We are of the opinion that the intent was the same with respect to Items 6 and 8 under the heading "Loan and Brokerage Division", and so hold.

With respect to Item 7, it appears on the face of the item itself that it is for the "traveling expenses" of the "Banking Department". The term "Banking Department" obviously embraces more than one division of that department, so that, in the absence of other considerations affecting construction, the item would be construed as available for expenditure for all divisions. A substantially similar item was found in Item 19 of the appropriation for the preceding biennium. By virtue of the fact, however, that all expenses of supervising building and loan associations, credit unions, and loan and brokerage companies were specifically provided for by separate items of appropriation, it was clear that that item was intended only for traveling expenses incurred in supervising banks.

In this biennium we find an item of $5,000.00 separately provided for traveling expenses of the building and loan division, and we find a separate appropriation for enforcing the Credit Union laws. Since an appropriation not only provides money for a particular purpose, but limits the expenditure for that purpose, it is clear that Item 7 is not intended to be available for travelling expenses incurred in supervising building and loan associations and credit unions. It is, however, available for all other traveling expenses of the "Banking Department" in toto, which include, of course, traveling expenses in supervising banks and loan and brokerage companies.

APPROVED AUG 27, 1940
/s/ Grover Sellers
First Assistant Attorney General

APPROVED: OPINION COMMITTEE
BY:      BWB, CHAIRMAN

RWF:jm:wb

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ R. W. Fairchild
Richard W. Fairchild,
                Assistant